[No. B238618. Second Dist., Div. Six. Apr. 1, 2015.]

EAST WEST BANK, Plaintiff and Respondent, v.
RIO SCHOOL DISTRICT, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

744

COUNSEL

Baute Crochetiere & Gilford, David P. Crochetiere, Andrew Michael Gilford; Negele & Associates, James R. Negele and Jonathan R. Hickman for Defendant and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, Christian M. Keiner, Chelsea R. Olson and James P. Wiezel for Education Legal Alliance of the California Schools Board Association as Amicus Curiae on behalf of Defendant and Appellant.

Raisin & Kavcioglu, Bradley A. Raisin, Armenak Kavcioglu, Aren Kavcioglu; Cox, Castle & Nicholson, Kenneth B. Bley, Randy P. Orlik and Susan S. Davis for Plaintiff and Respondent.

OPINION

GILBERT, P. J.—Public Contract Code section 7107 (section 7107) allows a public entity to withhold funds due a contractor when there are liens on the

property or a good faith dispute concerning whether the work was properly performed. Here we conclude that a dispute over the contract price does not entitle a public entity to withhold funds due a contractor.

We disagree with *Martin Brothers Construction, Inc. v. Thompson Pacific Construction, Inc.* (2009) 179 Cal.App.4th 1401 [102 Cal.Rptr.3d 419] (*Martin Brothers*), which holds otherwise. We also conclude the doctrine of unclean hands does not apply to section 7107.

This case arises from a contract for the construction of a school. After the school was completed, the school district and its general contractor engaged in a decade-long legal battle. The result was a judgment for the contractor FTR International, Inc. (FTR), against the Rio School District (District) exceeding $9 million. District appeals.

We conclude the trial court properly assessed penalties against District because it did not timely release retained funds required by section 7107. [[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

We also conclude [[/]]* the trial court erred in awarding fees for work not solely related to FTR's cause of action pursuant to section 7107.

We reverse and remand with instructions in the instances where the trial court erred and affirm in all other respects.

## FACTS

FTR has constructed buildings for public entities, including schools, courthouses and libraries for 15 years. In 1999, FTR submitted the winning bid in the amount of $7.345 million to construct a school for District.[2]

During construction, FTR submitted approximately 150 proposed change orders (PCO). FTR claimed some of the PCOs were necessary because the plans provided by District were inadequate or misleading. District denied most of the PCOs on the grounds that the work was covered under the basic contract, the amounts claimed were excessive or that a PCO was not timely

---

[2] East West Bank (Bank) held a security agreement covering virtually all of FTR's personal property, including the judgment. The Bank foreclosed and claims to have purchased the judgment at the foreclosure sale. FTR disputes the validity of the sale, but concedes the Bank has some interest in the judgment. Pursuant to an agreement between the Bank and FTR we have granted Bank's motion to substitute in as a party instead of FTR. We continue to refer to respondent as FTR. To the extent applicable, reference to FTR also includes the Bank.

under the contract. The construction was completed in June 2001. District filed a notice of completion on August 7, 2001. The school has been occupied since May 2001.

Pursuant to the contract, District retained 10 percent of each progress payment. At the completion of the work, District held a reserve of $676,436.49. That amount, however, was subject to stop notices filed by FTR's subcontractors. The last of the stop notices was released on September 28, 2004.

District refused to pay the balance due under the contract, refused to pay any but a small portion of the amounts claimed by FTR in its PCOs, refused to release any of the retention and refused to compensate FTR for damages allegedly caused by delay and disruption. FTR sued District to recover damages for breach of contract, statutory penalties under section 7107,[3]

---

[3] Section 7107 states: "(a) This section is applicable with respect to all contracts entered into on or after January 1, 1993, relating to the construction of any public work of improvement. [¶] (b) The retention proceeds withheld from any payment by the public entity from the original contractor, or by the original contractor from any subcontractor, shall be subject to this section. [¶] (c) Within 60 days after the date of completion of the work of improvement, the retention withheld by the public entity shall be released. In the event of a dispute between the public entity and the original contractor, the public entity may withhold from the final payment an amount not to exceed 150 percent of the disputed amount. For purposes of this subdivision, 'completion' means any of the following: [¶] (1) The occupation, beneficial use, and enjoyment of a work of improvement, excluding any operation only for testing, startup, or commissioning, by the public agency, or its agent, accompanied by cessation of labor on the work of improvement. [¶] (2) The acceptance by the public agency, or its agent, of the work of improvement. [¶] (3) After the commencement of a work of improvement, a cessation of labor on the work of improvement for a continuous period of 100 days or more, due to factors beyond the control of the contractor. [¶] (4) After the commencement of a work of improvement, a cessation of labor on the work of improvement for a continuous period of 30 days or more, if the public agency files for record a notice of cessation or a notice of completion. [¶] (d) Subject to subdivision (e), within seven days from the time that all or any portion of the retention proceeds are received by the original contractor, the original contractor shall pay each of its subcontractors from whom retention has been withheld, each subcontractor's share of the retention received. However, if a retention payment received by the original contractor is specifically designated for a particular subcontractor, payment of the retention shall be made to the designated subcontractor, if the payment is consistent with the terms of the subcontract. [¶] (e) The original contractor may withhold from a subcontractor its portion of the retention proceeds if a bona fide dispute exists between the subcontractor and the original contractor. The amount withheld from the retention payment shall not exceed 150 percent of the estimated value of the disputed amount. [¶] (f) In the event that retention payments are not made within the time periods required by this section, the public entity or original contractor withholding the unpaid amounts shall be subject to a charge of 2 percent per month on the improperly withheld amount, in lieu of any interest otherwise due. Additionally, in any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to attorney's fees and costs. [¶] (g) If a state agency retains an amount greater than 125 percent of the estimated value of the work yet to be completed pursuant to Section 10261, the state agency shall distribute undisputed retention proceeds in accordance with

attorney fees, interest and costs. District filed a separate action seeking damages for 416 alleged violations of the False Claims Act (Gov. Code, § 12650 et seq.). [[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

After a 243-day court trial, the trial court found in favor of FTR. It awarded $9,356,124.81 to FTR, which includes damages for the balance due under the contract, extra work performed by FTR, delay and disruption caused by District, statutory penalties pursuant to section 7107, attorney fees, prejudgment interest and costs.

## DISCUSSION

### Section 7107 Penalties

District contends the trial court erred in awarding penalties under section 7107. Subdivision (c) of this section provides, in part: "Within 60 days after the date of completion of the work of improvement, the retention withheld by the public entity shall be released. In the event of a dispute between the public entity and the original contractor, the public entity may withhold from the final payment an amount not to exceed 150 percent of the disputed amount."

■ Subdivision (f) of section 7107 provides in lieu of interest, a penalty of 2 percent per month on any amount improperly withheld plus attorney fees and costs.

Here the trial court found the project was completed on August 7, 2001. The retention was required to be released within 60 days, on October 5, 2001. Stop notices, however, prohibited District from releasing the funds on that date. The stop notices have since been released, but District has refused to release any funds. District still had the entire retention amount of $676,436 at the time of the statement of decision, over 10 years after the project was completed. The court found District had no justification for retaining the funds after the stop notices were released. It assessed a 2 percent per month penalty from the date the stop notices were released for a total penalty of $1,537,404.96.

---

subdivision (c). However, notwithstanding subdivision (c), if a state agency retains an amount equal to or less than 125 percent of the estimated value of the work yet to be completed, the state agency shall have 90 days in which to release undisputed retentions. [¶] (h) Any attempted waiver of the provisions of this section shall be void as against the public policy of this state."

*See footnote, *ante,* page 742.

District argues it was entitled to withhold all the retention because there was a good faith dispute between FTR and District. The dispute was FTR's claim that District wrongfully denied all but a few of its 150 PCOs. In other words, the dispute was over how much, if any, District owed FTR.

■ The purpose of a retention is to provide security against potential mechanics liens and to insure the contractor will complete the work properly and repair defects. (*Yassin v. Solis* (2010) 184 Cal.App.4th 524, 534 [108 Cal.Rptr.3d 854].) The retained funds must be paid to the contractor when the security is no longer required. (*Ibid.*)

Here, after the stop notices were cleared, District points to nothing for which security was required. The dispute on which District relies, FTR's claim against District, does not require District to retain FTR's funds as security. But District argues there is no language in section 7107 limiting the term "dispute" to disputes relating to the legitimate purposes for the retention.

District relies on *Martin Brothers, supra*, 179 Cal.App.4th 1401, decided after the evidence in this case was heard. In *Martin Brothers*, a general contractor on a public school project retained a portion of the progress payments due a subcontractor. After the subcontractor completed its work, the subcontractor claimed additional money was owed it due to change orders. The subcontractor sought a 2 percent per month penalty against the contractor pursuant to section 7107, subdivision (f) for failure to release funds to the subcontractor within seven days of the release of funds on the general contract, as required by subdivision (d). Subdivision (e) provides for an exception "if a bona fide dispute exists between the subcontractor and the original contractor." In holding the subcontractor was not entitled to the penalty, the Court of Appeal concluded the exception of section 7107, subdivision (e) "applies to any good faith dispute between a general contractor and subcontractor." (*Martin Brothers, supra*, at p. 1414.)

■ We decline to follow *Martin Brothers*. The purpose of section 7107 is to deter public entities from improperly withholding retention payments. (*FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 804–805 [124 Cal.Rptr.3d 64].) The statute is remedial. (*S&S Cummins Corp. v. West Bay Builders, Inc.* (2008) 159 Cal.App.4th 765, 777 [71 Cal.Rptr.3d 828].) A remedial statute must be liberally construed to promote its purpose. (*Booth v. Robinson* (1983) 147 Cal.App.3d 371, 378 [195 Cal.Rptr. 130].) Relief will be granted unless clearly forbidden. (*Ibid.*) When its meaning is doubtful, it will be construed to suppress the mischief at which it is directed. (*Ibid.*) We may not construe the words of section 7107 beyond their plain meaning.

■ Section 7107's purpose of ensuring the prompt release of retention funds would not be served if any dispute justified retaining the funds. There

is no reason to allow a public entity to retain the funds once their purpose of providing security against mechanics liens and deficiencies in the contractor's performance has been served. Unless the dispute relates to one of those purposes, the public entity will not be protected from the statutory penalty. FTR's action against District is not such a dispute.

District points to a recodification of Civil Code former section 3260, subdivision (c) into Civil Code section 8812, subdivision (c). (Stats. 2010, ch. 697, § 20.) The sections govern retentions in construction contracts for private works, and are similar to Public Contract Code section 7107, subdivision (c). Civil Code former section 3260 originally provided, in part: "In the event of a dispute between the owner and the original contractor, the owner may withhold from the final payment an amount not to exceed 150 percent of the disputed amount." When the section was recodified into Civil Code section 8812, subdivision (c) was amended to read: "If there is a *good faith* dispute between the owner and direct contractor *as to a retention payment due*, the owner may withhold from final payment an amount not in excess of 150 percent of the disputed amount." (Italics added.) District points out that the Legislature did not similarly amend Public Contract Code section 7107, subdivision (c) to add "as to a retention payment due." District claims this shows *Martin Brothers* was properly decided; that is, any good faith dispute is sufficient to allow withholding of 150 percent of the disputed amount.

But the Law Revision Commission Comments to Civil Code section 8812 state that the section is recodified without substantive changes. In addition, Senate Bill No. 189 (Reg Sess. 2009–2010), under which Civil Code section 8812 was recodified, expressly states that, with exceptions not relevant here, the act is intended to be nonsubstantive.[4] It is noteworthy the Legislature also added the requirement that the dispute be in "good faith" to Civil Code section 8812, subdivision (c). The Legislature did not amend Public Contract Code section 7107, subdivision (c) to add the term "good faith." No one would seriously argue section 7107, subdivision (c) allows a public entity to create a dispute in bad faith.

 District argues that because it properly withheld the retention funds under *stop notices* past the 60-day statutory period, it has complied with the statute and cannot be penalized. But the purpose of section 7107 is to deter a public entity from unreasonably withholding retention funds. The purpose of the statute would not be served by interpreting it as District suggests. Once the legitimate purpose for retaining the funds ends, the public entity must release the funds or suffer the statutory penalty. District may not hold these

---

[4] We grant FTR's request for judicial notice of Civil Code section 8812's legislative history.

funds hostage because it disputes amounts owed under the contract that includes numerous change orders. [[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Attorney Fees

The trial court awarded FTR $3.85 million attorney fees. The contract did not contain an applicable attorney fee clause. The only basis for the award was section 7107. Section 7107 provides for an award of attorney fees incurred in obtaining the release of retention monies withheld under the contract. In this case, the amount withheld was $676,436.40.

The trial court found that the $3.85 million award was justified because District raised an "unclean hands" defense to FTR's action, including its action under section 7107. The court determined that by raising the unclean hands defense, issues in 40 percent of the pretrial phase and 75 percent of the trial phase of the action became "inextricably intertwined."

FTR's counsel did not submit itemized time records, estimates of time spent on discrete tasks, billings submitted to the client or records of payments made for work done. Instead, counsel submitted estimates of time spent prepared years after the work was performed.

Questioning counsel's estimates, the trial court undertook its own analysis of the evidence and the record. Some analysis involved events that occurred prior to the time the case was assigned to the court. The court concluded the reasonable lodestar award of fees is $3.5 million. In consideration of the factors stated in *Serrano v. Priest* (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303], the court added 10 percent to the lodestar, for a total award of $3.85 million.

■ District argues that without time sheets, billing entries or reliable testimony, the court had no foundation for determining how much time counsel spent over 10 years of litigation. But here the trial court made its own determination of fees based on its analysis and the record. A trial court may award fees solely on the basis of the experience and knowledge of the trial judge. (*Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227 [168 Cal.Rptr. 525].) That some proceedings occurred prior to the assignment of the action to the trial court, does not prevent the court from estimating fees based on the record.

District argues the trial court failed to apportion the fees between those spent on FTR's cause of action pursuant to section 7107 and the other causes

---

*See footnote, *ante*, page 742.

of action. FTR answers that no apportionment is required for fees incurred for representation on an issue common to a cause of action in which fees are appropriate and one in which fees are not allowed. (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 555 [66 Cal.Rptr.3d 175].)

The linchpin in the trial court's finding of inextricably intertwined issues is District's unclean hands defense. FTR argued that it was required to prevail on its other causes of action in order to defeat the unclean hands defense to its section 7107 cause of action. The trial court essentially accepted the argument.

The trial court had previously found, however, that the unclean hands doctrine did not apply to any of FTR's causes of action. The court stated: "The defense of unclean hands arises from the maxim: 'He who comes into Equity must come with clean hands.' *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048 [272 Cal.Rptr. 250]. Whether the doctrine of unclean hands applies is a question of fact. *CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631 [76 Cal.Rptr.2d 615]. [¶] The *Blain* court enunciated a three-pronged test to determine the effect to be given to the plaintiff's unclean hands conduct. Whether the particular misconduct is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries. *Blain, supra*, . . . at p. 1060; accord, *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 618–621 [12 Cal.Rptr.2d 741]; *CrossTalk Productions, supra*, [at pp. 641–643]. [¶] FTR contends, and the District concedes, that there is no analogous case law supporting the application of the unclean hands defense to the facts present here. The Court therefore finds that the District failed to meet the first prong stated in *Blain*. That finding alone is sufficient to warrant the denial of the defense. *CrossTalk Productions, Inc., supra*, [at pp. 641–642] (defense rejected, court noting that '[d]efendant has cited no authority finding unclean hands generally to be a defense to [similar] claims'); *In re Brandie W.* (1984) 157 Cal.App.3d 110 [203 Cal.Rptr. 537] (defense rejected because 'neither party has cited any case from this state applying the clean hands doctrine to facts analogous to those before us. Our own research has likewise been unfruitful.')."

FTR argues that because the application of the doctrine of unclean hands is a question of fact, the case had to be tried in order to determine the defense did not apply. It claims that rarely can an unclean hands defense be resolved on a legal basis. (Citing *CrossTalk Productions, Inc. v. Jacobson, supra*, 65 Cal.App.4th at p. 641.) It points out that the trial court found there is no analogous case law supporting the application of the unclean hands defense "to the facts presented here."

█ Although the application of the unclean hands defense is usually a question of fact, under appropriate circumstances it may be determined as a matter of law. (See, e.g., *Mendoza v. Ruesga* (2008) 169 Cal.App.4th 270, 279 [86 Cal.Rptr.3d 610] [holding as a matter of law unclean hands defense does not apply].) Here because there is no analogous case applying the doctrine of unclean hands as a defense to an action pursuant to section 7107, the doctrine can be determined as a matter of law.

Not only is there no analogous case applying the doctrine to an action pursuant to section 7107, there are analogous cases holding as a matter of law that the doctrine does not apply to such statutory causes of action.

In *Mendoza v. Ruesga, supra,* 169 Cal.App.4th 270, a group of immigrants sued an immigration consultant alleging violations of the Immigration Consultants Act (ICA). (Bus. & Prof. Code, § 22440 et seq.) The defendant raised unclean hands as a defense based on the immigrants' undocumented status. The court held the doctrine of unclean hands inapplicable as a matter of law stating: "Plaintiffs contend that as a matter of law the unclean hands doctrine is inapplicable to their cause of action under the ICA because it is based on Ruesga's violation of statutes intended to protect consumers. [Fn. omitted.] We agree with plaintiffs. 'It is true that when the Legislature enacts a statute forbidding certain conduct for the purpose of protecting one class of persons from the activities of another, a member of the protected class may maintain an action notwithstanding . . . that he has shared in the illegal transaction. The protective purpose of the legislation is realized by allowing the plaintiff to maintain his action against a defendant within the class primarily to be deterred.' [Citation.]" (*Mendoza,* at p. 279; see *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 543 [72 Cal.Rptr.3d 888] [holding defense of unclean hands does not apply to an action under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.)].)

█ Here section 7107 is intended to protect one class of persons (public works contractors) from the activities of another (public entities). As a matter of law the doctrine of unclean hands does not apply.

It may be that as to other causes of action in this case, the matter had to be tried to determine whether unclean hands applied. But no factual findings were necessary to determine that the doctrine of unclean hands does not apply to an action under section 7107. The issues in FTR's action pursuant to section 7107 were not inextricably intertwined with other issues in the case.

█ It is beside the point that District urged the trial court to wait until the end of trial to rule on its unclean hands defense. The question is not when the

court rules, but whether there are common issues that must be determined to resolve both a cause of action for which fees are allowed and a cause of action for which fees are not allowed. Where, as here, there are no such common issues, a defendant may recover attorney fees relating solely to the cause of action for which fees are allowed. (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83].)

## CONCLUSION

The matter is reversed and remanded to the trial court with instructions to limit the award of attorney fees to fees incurred solely in relation to FTR's cause of action under section 7107. [[/]]*

In all other respects, the judgment is affirmed.

Each party is to bear its own costs.

Yegan, J., and Perren, J., concurred.

---

*See footnote, *ante*, page 742.